# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-51015

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SHANNON L. SMITH,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:08-CR-241-2

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Shannon Smith ("Smith") challenges the sufficiency of the evidence which led to his conviction, after a jury trial, of aiding and abetting possession with intent to distribute more than 50 grams of crack cocaine (count one) and possession of a firearm in furtherance of a drug-trafficking crime (count two).[1] We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] He does not challenge his conviction of felon in possession of a firearm (count 3).

No. 13-51015

I.

On October 23, 2008, the Odessa, Texas Police Department ("OPD") set up a controlled buy using a confidential informant ("CI"). At the officers' direction, the CI called his supplier, Randell McKoy ("McKoy"), and arranged to meet him at a local restaurant to purchase crack cocaine. McKoy agreed to sell three ounces of cocaine to the CI for $2500.

About an hour after the meeting was arranged, McKoy called the CI and told him he was outside of the restaurant in a gray Lincoln pickup truck. OPD officers that were in the area drove to the restaurant parking lot in an unmarked police vehicle. The officers located an unoccupied gray Lincoln pickup truck. One of the officers got out of the vehicle and observed two males, later identified as Appellant, Smith, and McKoy, walking toward her. The officer heard one male say to the other, "He is on his way." The officer continued watching the men until they entered a nail salon. When McKoy exited the nail salon police detained him. Immediately after, officers entered the nail salon and detained Smith.

Once McKoy and Smith were detained the officers directed them to sit on the ground. While McKoy was seated, an OPD officer noticed him making unusual movements. The officer ordered McKoy to stand. When McKoy stood, OPD officers observed a "very obvious" bulge in McKoy's waistband. The officers retrieved 105.69 grams of crack cocaine. Officers also searched Smith. They found in Smith's pants a bundle of cash amounting to $850 in one of his pockets and a bundle containing $910 in his other pocket.

OPD officers also searched the gray Lincoln pickup truck and found a loaded .45 caliber handgun between the center console and the driver's seat. A magazine with 13 rounds of ammunition was in place in the weapon. Smith initially stated that he was unaware of the handgun in the truck, that it did not belong to him, and that it belonged to his aunt. However, during a later

2

No. 13-51015

search of Smith's home, officers found a box of .45 caliber ammunition, a case for a Springfield Armory .45 caliber handgun with a serial number that matched the handgun found in the vehicle, ballistic body armor, and a car-repair bill belonging to McKoy.

At trial, Smith testified and admitted that he owned the handgun, he knew the handgun was in his pickup truck, and he knew the firearm had bullets in the magazine. Smith also admitted, and the parties stipulated, that Smith had a prior felony conviction for trafficking cocaine. An OPD supervisor told the jury that in her experience as a narcotics officer it was common for officers to find firearms on persons arrested for drug-trafficking offenses. She also testified that drug traffickers carry firearms to protect themselves, their narcotics, and their money. An FBI Agent also testified and explained that drug traffickers use firearms for protection and that he has previously recovered bullet-resistant vests from drug traffickers. An OPD detective told the jury that each bundle of cash found in Smith's pockets approximated the price of one ounce of cocaine ($850), indicating that Smith and McKoy had engaged in other drug transactions that day.

The jury convicted Smith of aiding and abetting possession with intent to distribute more than 50 grams of crack cocaine (count 1), possession of a firearm in furtherance of a drug-trafficking crime (count 2), and being a felon in possession of a firearm (count 3).

In Smith's first appeal to this Court, he challenged the sufficiency of the evidence on counts one and two. We affirmed his conviction. We concluded that Smith's counsel incorrectly believed that Smith was charged with conspiracy and failed to challenge Smith's actual conviction of aiding and abetting; thus, Smith had waived the sufficiency argument on that offense. We also concluded that there was sufficient evidence to support a conviction of firearm possession in furtherance of a drug trafficking offense.

No. 13-51015

Smith moved for an out-of-time appeal under 28 U.S.C. § 2255 in the district court.  Smith argued, among other things, that his appellate counsel was ineffective for waiving any challenge to count one.  The district court granted Smith's motion for a new appeal because of his appellate counsel's deficient performance.  Smith timely filed this appeal challenging the sufficiency of the evidence to convict him on counts one and two.

## II.

Because Smith moved for a judgment of acquittal at the close of the government's case and at the close of the evidence, we review the sufficiency of the evidence *de novo*.[2]  "We will affirm the district court 'if a reasonable trier of fact could conclude [that] the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict.'"[3]

## III.

### A.  Count One: Aiding and Abetting Possession with Intent to Distribute

In order to convict Smith of possession with the intent to distribute, the government was required to prove beyond a reasonable doubt that the defendant "(1) knowingly (2) possessed [cocaine] (3) with the intent to distribute it."[4]  "To sustain a conviction for aiding and abetting under 18 U.S.C. § 2, the government must show that a defendant associated with a criminal venture, purposefully participated in the criminal activity, and sought by his

---

[2] *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008).

[3] *Id.* (citation omitted) (alteration in original) (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007)).

[4] *United States v. Polk*, 56 F.3d 613, 619-620 (5th Cir. 1995) (citing 21 U.S.C. § 841(a)(1)) (citation omitted).

or her actions to make the venture succeed."[5]  Stated another way, to aid and abet means to "assist the perpetrator of a crime with some affirmative act designed to aid the venture, while sharing the criminal intent."[6]

Smith argues that no reasonable jury could have convicted him of aiding and abetting possession of drugs because the evidence at trial failed to establish that he knew a drug transaction was occurring.  He argues that the government was only able to prove he was at the location at the time that his friend was engaging in drug-related activities.

Our review of the record persuades us that the evidence supports a finding that Smith aided and abetted in the possession of the cocaine with the intent to distribute.  Smith drove his own vehicle to transport McKoy to the location where the drug transaction was scheduled to occur.  Smith had in his vehicle a loaded handgun commonly carried by drug dealers to protect their drugs and cash.  Smith carried large quantities of cash in his pockets in amounts similar to proceeds of earlier sales of drugs.  An officer overheard one of the men say to the other, "He is on his way," which a reasonable jury could infer was referencing the CI.  McKoy had a "very obvious" and "readily apparent" bulge in his waistband where he attempted to hide the drugs.  At Smith's home, the police discovered documents belonging to McKoy, body armor, and ammunition.  The government established that Smith had a previous conviction for distribution of cocaine, which the government introduced to prove his criminal intent and knowledge of drug transactions. Finally, Smith lied to the police during the investigation about the ownership of the firearm.  Based on this evidence, a reasonable jury could have rejected

---

[5] *Id.* (citation omitted).

[6] *Id.* (citation omitted).

No. 13-51015

Smith's explanation and concluded that he knowingly aided and abetted the possession of crack cocaine with the intent to distribute it.

### B. *Count Two: Possession of a Firearm in Furtherance of a Drug-Trafficking Crime*

Possession of a firearm "is 'in furtherance' of the drug trafficking offense when it furthers, advances, or helps forward that offense."[7]   In determining whether possession of the firearm is "in furtherance" of a drug trafficking offense we consider several factors, including:

> [T]he type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.[8]

Principally, Smith argues that he cannot be convicted of possession of a firearm in furtherance of the drug trafficking crime if the evidence is insufficient to establish that he was aware that the drug transaction was taking place.  Because we find that the evidence is sufficient to support this knowledge element in connection with count one, we reject this argument.

Smith also argues that the evidence was insufficient to prove he actually possessed the firearm in furtherance of a drug trafficking offense.  We are satisfied that a reasonable jury could conclude that Smith's firearm possession "further[ed], advance[ed], or help[ed] forward" the drug trafficking offense.  Smith drove McKoy in his vehicle to the location of the sale.  Next to Smith's right leg, between the driver's seat and center console, Smith had his large caliber, high capacity handgun fully loaded and readily accessible.  Smith and his handgun were within arm's reach of the drugs while in the truck.  At trial,

---

[7] *United States v. Ceballos-Torres*, 218 F.3d 409, 411 (5th Cir. 2000), *amended in part*, 226 F.3d 651 (5th Cir. 2000).

[8] *Id.* at 414-415.

No. 13-51015

Smith admitted to possessing the firearm, which was illegal because of his previous felony conviction for distribution of cocaine. Viewing all facts and inferences in the light most favorable to the verdict, we find sufficient evidence for the jury to conclude that Smith possessed the firearm in furtherance of the drug trafficking offense.

## IV.

A reasonable jury could conclude, based on the evidence presented at trial, that Smith aided and abetted the possession with the intent to distribute cocaine and possessed a firearm in furtherance of a drug trafficking crime. Smith admitted that he possessed the firearm as a convicted felon, and he does not challenge that conviction on appeal. We, therefore, affirm his conviction on all counts.

AFFIRMED.